IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

SEP 2 [illegible]

JAMES N. HATTEN, Clerk
By: [signature] Deputy Clerk

NAPOLEON VICTOM,

    Plaintiff,

v.

JACQUELINE H. BARRETT,
Individually and in her
Official Capacity as Fulton
County Sheriff, SHERIFF'S
DEPARTMENT OF FULTON COUNTY
GEORGIA, FULTON COUNTY BOARD OF
COMMISSIONERS, and JOHN DOE
NUMBERS 1 TO 5,

    Defendants.

CIVIL ACTION NO.
1:04-CV-1140-JEC

## O R D E R  &  O P I N I O N

This case is presently before the Court on plaintiff's Motion to Vacate Judgment and Reopen Case [38] and defendants Jacqueline Barrett and the Sheriff's Department's Motion to Dismiss [35]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that plaintiff's Motion to Vacate Judgment and Reopen Case [38] should be **GRANTED** and defendants' Motion to Dismiss should be **GRANTED in part** and **DENIED in part**.

AO 72A
(Rev.8/82)

## BACKGROUND

Plaintiff brought this suit to recover damages for his allegedly unconstitutional detention in the Fulton County Jail in March of 2004. (Am. Compl. [11].) On March 3, 2004, the Atlanta Police Department arrested plaintiff, and charged him with possession of cocaine. (*Id.* at ¶ 14.) The police transported plaintiff to the Fulton County Jail, where he was held as a pretrial detainee, pending criminal proceedings for his violation of O.C.G.A. § 16-13-30. (*Id.*)

On March 11, 2004, the judge handling the criminal action against plaintiff signed a Release Order, directing that plaintiff be released to Pretrial Services Supervision ("PSS"). (*Id.* at ¶ 18.) Plaintiff's court-appointed attorney immediately faxed the Release Order to the jail, and hand-delivered the Order to defendants. (*Id.* at ¶ 19.) At some point on March 11th, plaintiff was put in a holding cell in preparation for his release. (Am. Compl. [11] at ¶ 24.) However, plaintiff was not released until March 15, 2004, four days after defendants received the Release Order. (*Id.* at ¶ 23.)

Shortly after his release from jail, plaintiff filed this action against the individual corrections officers involved in his detention, the Fulton County Sheriff, the Sheriff's Department, and the Fulton County Board of Commissioners. (Compl. [1].) In his Amended Complaint, plaintiff asserts a variety of federal and state law claims against all of these defendants. (Am. Compl. [11].) In

2

support of his federal claims, plaintiff cites defendants' failure to release him for four days after the date of the Release Order.[1] (*Id.* at ¶¶ 40-50.) In addition, plaintiff alleges that he was subjected to unreasonable strip searches throughout the period of his detention. (*Id.* at ¶¶ 62-71.) He also claims that the holding cell he occupied from March 11th through March 14th was cramped and isolated, and lacked basic necessities such as a bed, wash basin or toilet. (Am. Compl. [11] at ¶¶ 24, 51-61.)

The Court previously dismissed plaintiff's claims against the Fulton County Board of Commissioners. (Order [27].) Defendants Barrett and the Sheriff's Department subsequently filed a motion to dismiss plaintiff's claims. (Defs.' Mot. to Dismiss [35].) Plaintiff failed to respond to the motion, and the Court granted the motion as unopposed. (Order [36].) The clerk entered a judgment dismissing the action. (Judgment [37].)

Plaintiff has now filed a motion to vacate the judgment and reopen the case. (Pl.'s Mot. to Vacate Judgment [38].) Plaintiff has also filed a belated response to defendants' motion to dismiss. (Pl.'s Response [40].) Plaintiff's motion to vacate and defendants'

---

[1] Plaintiff states in his Amended Complaint that he was held for five extra days. (Am. Compl. [11] at ¶ 27.) According to the dates plaintiff has supplied for the Release Order and his actual release, plaintiff was detained for four extra days. (*Id.* at ¶¶ 18, 26.)

3

motion to dismiss are presently before the Court.

## DISCUSSION

### I. Plaintiff's Motion to Vacate Judgment and Reopen the Case

The Court granted defendants' motion to dismiss as unopposed on September 27, 2005, after the time for plaintiff's response expired. (Order [36].) In his motion to vacate the judgment resulting from the dismissal, plaintiff contends that, as a result of his counsel's serious medical problems, plaintiff and defendants had agreed to an extension of time for plaintiff's response. (Pl.'s Mot. to Vacate Judgment [38].) Defendants have not objected to plaintiff's motion, and do not dispute that they entered into an agreement with plaintiff for an extension of time. In its previous Order addressing this issue, the Court noted that defendants had failed to respond to plaintiff's motion, and allowed plaintiff until December 23, 2005 to file a response to the original motion to dismiss. (Order [39].) Plaintiff filed his response within the specified time. (Pl.'s Response [40].) As it appears that plaintiff had an agreement with defendants for an extension of time to respond to defendants' motion to dismiss, and as plaintiff has filed his response within the time specified in the Court's order, the Court **GRANTS** plaintiff's motion to vacate the judgment dismissing plaintiff's case.

4

## II. Defendants' Motion to Dismiss

When deciding whether to dismiss a claim under Rule 12(b)(6) or Rule 12(c), the Court accepts the allegations in plaintiff's complaint as true, and construes those allegations in the light most favorable to plaintiff. *Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998). A complaint is subject to dismissal when "'it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Marsh v. Butler County*, 268 F.3d 1014, 1022 (11th Cir. 2001)(quoting *Conley v. Gibson*, 355 U.S. 41 (1957)); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Dismissal is also appropriate when it is apparent from the face of the complaint that plaintiff's claims are barred by an affirmative defense. *Id.*

### A. Plaintiff's Claims Against the Sheriff's Department

A county sheriff's department is not a legal entity subject to suit or liability. *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). Accordingly, plaintiff's claims against defendant Fulton County Sheriff's Department should be **DISMISSED**.

### B. Plaintiff's Claims Against Sheriff Barrett in her Official Capacity

Plaintiff's claims against Sheriff Barrett all deal with her administration of the Fulton County Jail. (*See* Am. Compl. [11].) The Eleventh Circuit has held that a Georgia sheriff's "'authority

and duty to administer the jail in his jurisdiction flows from the state.'" *Purcell v. Toombs County,* 400 F.3d 1313, 1325 (11th Cir. 2005) (quoting *Manders v. Lee,* 338 F.3d 1304, 1315 (11th Cir. 2003)). Consequently, as the Court explained in *Purcell*, a sheriff "functions as an arm of the state . . . when promulgating policies and procedures governing conditions of confinement at [the jail]." *Id.*

The Eleventh Amendment "protects a state from being sued in federal court without the state's consent."[2] *Manders,* 338 F.3d at 1308. It is well-settled that Eleventh Amendment immunity also bars a federal suit against an "arm of the State." *Id.* Sheriff Barrett is thus entitled to Eleventh Amendment immunity from suit in her official capacity. *Id.* Accordingly, defendants' motion to dismiss plaintiff's claims against Sheriff Barrett in her official capacity should be **GRANTED**.

    **C. Plaintiff's Claims Against Sheriff Barrett in her Individual Capacity**

        **1. Plaintiff's claims under 42 U.S.C. § 1983**

---

[2] The Eleventh Amendment provides that federal courts' judicial power "shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has held that an unconsenting state is immune from federal lawsuits brought by the state's own citizens. *Manders,* 338 F.3d at 1308, n. 8 (citing *Carr v. City of Florence,* 916 F.2d 1521, 1524 (11th Cir. 1990) and *Hans v. Louisiana,* 134 U.S. 1 (1890)).

In Count I of his Complaint, plaintiff asserts a claim against defendant Barrett in her individual capacity under 42 U.S.C. § 1983. (Am. Compl. [11] at ¶¶ 38-75.) Section 1983 provides a private right of action to an individual whose federal rights have been violated by a person "acting under the color of state law." 42 U.S.C. § 1983. In order to establish a claim for relief under § 1983, plaintiff must demonstrate: 1) that defendant deprived him of a constitutional right, 2) while acting under color of state law.[3] *Hale v. Tallapoosa County*, 50 F.3d 1579, 1581 (11th Cir. 1995).

There is no *respondeat superior* liability under § 1983. *Braddy v. Florida Dep't of Labor,* 133 F.3d 797, 801 (11th Cir. 1998); *Marsh,* 268 F.3d at 1035. In order to prevail on his § 1983 claim against Barrett, plaintiff must establish a "causal connection between [Barrett's] actions . . . and the alleged constitutional deprivation." *Braddy,* 133 F.3d at 802. Plaintiff can establish a causal connection by demonstrating that Barrett instituted a policy that caused the deprivation, or that she was on notice of the need to correct the alleged deprivation, but failed to do so. *Id.*

Even if plaintiff can demonstrate a constitutional deprivation that can be attributed to Sheriff Barrett, Barrett may be entitled to qualified immunity. Qualified immunity confers complete protection

---

[3] Defendant Barrett does not dispute that she was acting "under color of state law." (Defs.' Reply [41].)

upon government officials sued in their individual capacities unless their conduct "'violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). *See also*, *Purcell*, 400 F.3d at 1319 (citing *Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994)). An official is entitled to qualified immunity if an objectively reasonable official in the same situation could have believed that his actions were lawful. *Vinyard*, 311 F.3d at 1346 (citing *Anderson v. Creighton*, 483 U.S. 635, 638-41 (1987)). In short, qualified immunity allows government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, and protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

Applying the above analysis, the Court must first determine whether plaintiff has alleged a constitutional violation. Plaintiff's Amended Complaint is difficult to follow. Plaintiff describes a number of allegedly unconstitutional incidents that occurred during his detention, but he does not bother to connect any of those

8

incidents to a particular constitutional provision." Construing the

incidents to a particular constitutional provision.[4] Construing the Amended Complaint in the light most favorable to plaintiff, the Court gleans three potential constitutional claims: 1) jail conditions in violation of the Fourteenth Amendment; 2) unreasonable strip searches in violation of the Fourth Amendment; and 3) plaintiff's detention for four days following the Release Order in violation of the Fifth and Fourteenth Amendments. The Court will consider each claim individually.

As a pretrial detainee, plaintiff's constitutional rights concerning the conditions of his confinement arise not from the Eighth Amendment, but from the Due Process Clause of the Fourteenth Amendment. *Tittle v. Jefferson County Comm'n,* 10 F.3d 1535, 1539, n. 3 (11th Cir. 1994). However, the standard for providing basic human needs to those incarcerated or in detention is the same under the Eighth and Fourteenth Amendments.[5] *Marsh v. Butler County,* 268 F.3d 1014, 1024, n. 5 (11th Cir. 2001). Accordingly, the Court will

---

[4] The Court notes that plaintiff is represented by counsel. Hence, the deference often given to a *pro se* plaintiff is not warranted here.

[5] The exception to this general rule is that pretrial detainees have a constitutional right to be free from conditions specifically, and solely, imposed as "punishment." *Bell,* 441 U.S. at 535 ("under the Due Process Clause a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"). This distinction is not relevant to plaintiff's jail conditions claim.

9

analyze plaintiff's jail conditions claim under the standards of the Eighth Amendment.

The Eighth Amendment prohibits "cruel and unusual punishment." *Marsh,* 268 F.3d at 1026. The Supreme Court has interpreted that phrase to require that inmates be furnished with "basic human needs," including medical care and "reasonable safety." *Id.* at 1029. Consequently, although prisons need not be comfortable, they must be humane. *Purcell,* 400 F.3d at 1319. Prison officials violate the Eighth Amendment when they "know of and disregard 'an excessive risk to inmate health or safety.'" *Id.* at 1319-1320.

Plaintiff's allegations about jail conditions do not meet this standard. (*See* Am. Compl. [11] at ¶¶ 51-61.) Plaintiff generally claims that he was detained in a holding cell for four days, where he was unable to shower on a daily basis or to go the bathroom as often as needed. (*Id.* at ¶¶ 27-32, 51-61.) He likens his cell to the "much-maligned dungeons of yore"--cramped, isolated, and dimly-lit. (*Id.* at ¶ 24.) He asserts that he had to eat "left-over spoiled sandwiches with a so-called drink." (*Id.* at ¶ 31.) None of these allegations support a claim for unconstitutional conditions of confinement. *See Purcell,* 401 F.3d at 1323 (finding that jail conditions "were not sufficiently grave to violate the Constitution"), and *Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir. 1985)(holding that plaintiff's complaints about food,

sanitation, and inadequate sleeping quarters did not rise to the level of a constitutional violation).[6] Accordingly, defendants' motion to dismiss plaintiff's claims about jail conditions should be **GRANTED**.

Plaintiff's strip search and unreasonable detention allegations are more serious. Plaintiff claims that he and other pretrial detainees were routinely strip-searched every time they returned to the jail from court appearances. (Am. Compl. [11] at ¶¶ 62-65.) Plaintiff contends that jail officials conducted these searches in the absence of any reasonable suspicion that he or any other detainee possessed contraband, pursuant to a blanket strip search policy instituted by defendant Barrett. (*Id.* at ¶ 66.)

Whether such searches are unconstitutional is still unsettled in this circuit. *See Bell v. Wolfish,* 441 U.S. 520 (1979), *Wilson v.*

---

[6] Plaintiff also suggests in his response that defendants failed to provide him with necessary medical care. (Pl.'s Response [40] at 15.) Plaintiff is correct that prison officials' deliberate indifference to serious medical needs gives rise to a constitutional claim. *See Harris v. Coweta County,* 21 F.3d 388, 393 (11th Cir. 1994). However, plaintiff does not allege in his Amended Complaint that he had a serious medical condition or that he requested, or needed, medical attention. (Am. Compl. [11].)

In a similar vein, plaintiff vaguely claims that he was "harassed" and "intimidated" during his detention. However, plaintiff's Amended Complaint does not provide any facts that would allow the Court to determine who is responsible for the harassment, or whether the harassment rose to the level of a constitutional violation. (*Id.*)

11

*Jones,* 251 F.3d 1340 (11th Cir. 2001), and *Evans v. City of Stephens,* 407 F.3d 1272 (11th Cir. 2005). In *Bell,* the Supreme Court upheld the constitutionality of strip searches of pretrial detainees "after every contact visit with a person from outside the institution," even in the absence of probable cause, where the searches were "reasonable." *Bell,* 441 U.S. at 558, 560. To determine reasonableness, the *Bell* Court explained that the Fourth Amendment requires courts to balance the need for a given search against the invasion of personal rights the search entails, considering "the scope of the particular intrusion, the manner in which [the search] is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559.

In *Wilson,* the Eleventh Circuit applied the *Bell* balancing test and concluded that a jail's strip search policy was unconstitutional because searches were conducted in the absence of any "reasonable suspicion that [the plaintiff] was concealing weapons or any other type of contraband." *Wilson,* 251 F.3d at 1343. Although *Wilson* would seem to require "reasonable suspicion" in every instance, the Eleventh Circuit later stated, in an *en banc* decision:

> Most of us are uncertain that jailers are required to have a reasonable suspicion of weapons or contraband before strip-searching--for security and safety purposes--arrestees bound for the general jail population.

*Evans,* 407 F.3d at 1278. The *Evans* Court observed that the Supreme

12

Court had never imposed such a "reasonable suspicion" prerequisite on inmate strip searches, but reflected that the case before it provided no opportunity to decide that specific question. *Id.* at 1279.

Moreover, *Wilson* is distinguishable from this case in at least two material ways: 1) The search in *Wilson* involved a detainee who had no contact with anyone outside the institution; and 2) unlike the detainee in *Wilson*, plaintiff was charged with drug possession, giving rise to at least some suspicion that he might obtain drugs or other contraband while outside the jail. *See Wilson*, 251 F.3d at 1343 (distinguishing *Bell* on similar grounds). Thus, even after *Wilson*, it was not entirely clear that the searches plaintiff describes in his Amended Complaint were unconstitutional.

Plaintiff does not allege that the routine searches of detainees upon returning to the jail were conducted in an abusive manner, or in an inappropriate place. (*See* Am. Compl. [11] at ¶¶ 63, 65.) In addition, the searches were only conducted on detainees re-entering the jail population after being in situations where they were potentially able to have contact with people outside the jail. (*Id.* at ¶ 65.) Plaintiff's only complaint about the searches is that they were conducted without a "reasonable suspicion" of finding weapons or contraband. (*Id.* at ¶ 66.) Given the uncertainty about this issue expressed by the Eleventh Circuit, and the material differences between this case and *Wilson,* the Court concludes that the routine

13

strip searches plaintiff describes in his Amended Complaint did not violate "clearly established" constitutional rights. Accordingly, Sheriff Barrett is entitled to qualified immunity on plaintiff's strip search claims. *Accord, Powell v. Barrett,* 376 F.Supp. 2d 1340, 1350 (N.D. Ga. 2005)(Story, J.). Defendants' motion to dismiss these claims should be **GRANTED**.

In addition to routine strip searches, plaintiff alleges that he was subjected to "retaliatory" searches between March 11 and March 15, 2004. (Am. Compl. [11] at ¶ 68.) Plaintiff claims that jail officials conducted these searches to punish him for complaining about his continued detention. (*Id.*) Assuming plaintiff's allegations are true, such "retaliatory" searches violate constitutional rights that were clearly established at the time of plaintiff's detention. *See Bell,* 441 U.S. at 535 (holding that pretrial detainees may not be punished prior to a lawful conviction), and *Magluta v. Samples,* 375 F.3d 1269, 1273 (11th Cir. 2004)("An intent to punish on the part of detention facility officials is sufficient to show unconstitutional pretrial punishment.").

However, plaintiff does not allege that Sheriff Barrett participated in, or was even aware of, the retaliatory searches. (Am. Compl. [11] at ¶¶ 62-71.) Nor does he allege such a widespread pattern of retaliatory searches that Barrett was on notice of a constitutional deprivation, which she failed to take appropriate

14

measures to correct. (*Id.*) In fact, the Amended Complaint provides no basis for imposing individual liability on Barrett for the retaliatory searches that plaintiff describes. *See Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990)(holding that sheriff was not liable for the acts of his deputy where he had "no actual notice of unconstitutional practices" and there was "no evidence of a history of widespread prior abuse"), and *Harris v. Ostrout,* 65 F.3d 912, 918 (11th Cir. 1995) (granting summary judgment to a jail superintendent with no "affirmative causal connection" to any allegedly unconstitutional acts). Accordingly, defendants' motion to dismiss plaintiff's retaliatory strip search claims should be **GRANTED**.

Plaintiff's final claim relates to his detention for four days beyond the date of his Release Order. (Am. Compl. [11] at ¶¶ 40-50.) Plaintiff contends that the judge handling his criminal case signed an Order directing that he be released from jail on March 11, 2004. (*Id.* at ¶ 18.) Plaintiff's attorney immediately faxed this Order to the jail, and hand-delivered the Order to defendants. (*Id.* at ¶ 19.) Despite repeated phone calls to the jail, plaintiff was not released until March 15th, four days after the date specified in the Order. (*Id.* at ¶ 23.) As a result of the delay, plaintiff missed a scheduled court date, and was precluded from participating in a diversionary drug treatment program. (*Id.* at ¶ 21.)

15

Assuming plaintiff's allegations are true, his unexplained detention for four days beyond his release date violated clearly established constitutional rights. *Cannon v. Macon County*, 1 F.3d 1558, 1563 (11th Cir. 1993), *modified*, 15 F.3d 1022 (1994) (recognizing a "constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release"). *See also, Whirl v. Kern*, 407 F.2d 781, 791 (5th Cir. 1968)("There is no privilege in a jailer to keep a prisoner in jail beyond the period of his lawful sentence.");[7] *County of Riverside v. McLaughlin*, 500 U.S. 44, 55 (1991)(establishing in an analogous situation a presumptive forty-eight hour deadline to hold a probable cause hearing for persons arrested without a warrant); and *Powell*, 376 F.Supp. 2d at 1351 ("While the Constitution does not mandate instantaneous release, it does require that a detainee be released within a reasonable time after the basis for his lawful detainment has ended.").

Plaintiff claims that he hand-delivered the Release Order to Barrett shortly after it was issued on March 11, 2004. (Am. Compl. [11] at ¶ 19.) Assuming plaintiff's allegations are true, Barrett was aware that he should have been released on March 11th. (*Id.*)

---

[7] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

According to plaintiff, the delay resulted from Sheriff Barrett's policy of failing to release detainees in a timely manner, or her failure to take any action to correct this obvious and recurring problem. (Am. Compl. [11] at ¶¶ 43-44, 46.) Construing the Amended Complaint in the light most favorable to plaintiff, his allegations are sufficient to withstand Barrett's motion to dismiss. *Accord, Rivas v. Freeman*, 940 F.2d 1491, 1495-96 (11th Cir. 1991)(denying qualified immunity to sheriff for plaintiff's mistaken arrest and six-day detention, stating that sheriff "was directly responsible for formulating policies concerning correct and accurate identification of suspects and ensuring that suspects are accounted for while incarcerated"). Accordingly, defendants' motion to dismiss plaintiff's claims based on his delayed release is **DENIED**.

### 2. Plaintiff's Remaining Federal Claims

As discussed in the Court's Order dismissing plaintiff's claims against the Fulton County Board of Commissioners, plaintiff's claims under 42 U.S.C. §§ 1981, 1985, and 1986, as well as plaintiff's claim under Title VI of the Civil Rights Act of 1964 ("Title VI"), fail as a matter of law. (Order [27] at 13-15.) These claims, as alleged in the Amended Complaint, are essentially disparate impact claims. (Am. Compl. [11] at ¶¶ 76-90.) However, § 1981 and § 1985, as well as Title VI, require proof of intentional discrimination. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("§

17

1981, like the Equal Protection Clause, can be violated only by purposeful discrimination"); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (for § 1985 liability, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"); *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001) (Title VI reaches only instances of intentional discrimination). Plaintiff has failed to sufficiently allege intentional discrimination.[8] (*See* Order [27] at 15.) Accordingly, defendants' motion to dismiss plaintiff's § 1981, § 1985, and Title VI claims should be **GRANTED**.

As the Court also previously explained, there must be a violation of § 1985 for there to be a violation of 42 U.S.C. § 1986. (*Id.*) *See Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997). Plaintiff has failed to properly allege a violation of § 1985. Accordingly, he has also failed to properly allege a violation of 42 U.S.C. § 1986, and defendant's motion to dismiss his § 1986 claim should be **GRANTED**.

### 3. Plaintiff's State Law Claims

Defendants' argument with respect to plaintiff's state law claims assumes that the Court will dismiss all of his federal claims.

---

[8] As the Court explained in its previous Order, plaintiff "failed to properly allege any facts that could be interpreted as sufficiently alleging disparate treatment." (Order [27] at 15.)

(Defs.' Mot. to Dismiss [35] at 6-7.) Defendants contend that the Court should decline to exercise jurisdiction over plaintiff's state law claims if it decides to dismiss all of his federal claims. (*Id.*) Pursuant to the Court's Order, plaintiff has a remaining federal claim under § 1983 claim based on his unreasonably lengthy detention. Accordingly, defendants' motion to dismiss plaintiff's state law claims should be **DENIED**.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiff's Motion to Vacate Judgment and Reopen Case [38] and **GRANTS in part** and **DENIES in part** defendants' Motion to Dismiss [35].

SO ORDERED, this 27 day of September, 2006.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE